AMELIA MORGAN *vs.* J. FRANK HOWLAND.

Oxford.    Opinion January 27, 1897.

*Corporation. Stockholder. Creditor. Unpaid Stock. R. S., c. 46, §§ 45, 46, 47, 48.*

When it is not shown that the defendant subscribed for and took shares in a corporation of a par value aggregating more than he has paid towards the debts of the corporation, he is not liable to a judgment creditor under R. S., c. 46.

Nor is he liable to corporation creditors on account of non-assessable shares subscribed for and taken by another in good faith, that were afterwards assigned to him, although the par value thereof may not have been paid to the corporation.

ON REPORT.

This was an action on the case, under R. S., c. 46, §§ 46 and

47, to recover a judgment from the defendant obtained October 13, 1894, in the Municipal Court of the Dorchester District, Boston, against the Dorchester Press Company, a corporation organized under the laws of Maine, but doing business in Massachusetts, and where the parties resided.

The plaintiff claimed that the defendant was liable under the statute for the debt of the corporation, because he was a stockholder in the Dorchester Press Company.

The case is stated in the opinion.

*Joseph Cummings*, for plaintiff.

The defendant acquired, by assignment, numerous shares from Pitman who never paid anything for the stock, which the defendant knew. It is in evidence that this was done to give the defendant a majority of the stock, and he had a controlling voice in the corporation, which he managed as his own private business. In fact, the defendant was the corporation, according to his own testimony, during the time the plaintiff's bill was contracted.

These shares, except one, had been issued to others, but were surrendered to the corporation which issued them to the defendant.

Shares of stock in a corporation are not necessarily extinguished by being transferred to the corporation, so that they cannot be reissued. *Com.* v. *Boston & Albany Railroad* Co., 142 Mass. 146; *Crease* v. *Babcock*, 10 Met. 525-556; *American Railway Frog Co.* v. *Haven*, 101 Mass. 398-402; *Dupee* v. *Boston Water Power Co.*, 114 Mass. 37-43; 1 Morawetz on Corp. § 114.

This rule prevails in this country generally.

*City Bank* v. *Bruce*, 17 N. Y. 507; *Coleman* v. *Columbia Oil Co.*, 51 Penn. St. 74; *State* v. *Smith*, 48 Vt. 266-285; *Williams* v. *Savage Manufacturing Co.*, 3 Md. Ch. 418-452; *Taylor* v. *Miami Exporting Co.*, 6 Ohio, 176-219; *Robinson* v. *Bealle*, 20 Ga. 275.

When a subscriber fails to take his stock, and never intends to pay for the same, the corporation, having incurred no liabilities, may accept his surrender of the stock.

Where a subscription is not paid, and the stock is transferred to the corporation as " treasury stock," and then sold below par, the

purchaser is liable for the unpaid par value. *Alling* v. *Wenzell*, 133 Ill. 264.

The defendant, as assignee of Pitman's stock, is subrogated to the liabilities, as well as the rights, of the original holder thereof. *R. R. Co.* v. *Boorman*, 12 Conn. 530; Angell & Ames on Corp., § 534; 1 Redf. Railw. § 42, n. 3; *Webster* v. *Upton*, 1 Otto, 65-72; 2 Morawetz on Corp., § 824.

As the defendant took the stock from the corporation, and it was not paid for by Pitman, or the others to whom it was issued originally, he received it subject to all liabilities and for all debts incurred since it was first issued to them. As this covered the entire period when the plaintiff's services were performed, she is entitled to recover. 1 Cook on Stock and Stockholders, § 258.

*James S. Wright*, for defendant.

SITTING: PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

HASKELL, J. November 10, 1891, three men, Morgan, W. F. and F. L. Davis, organized a corporation with 200 shares of stock at a par value of $50 each, $10,000. Each one subscribed for two shares. January 15, 1892, Morgan sold his publishing plant to the corporation for 101 shares of stock, and one share was issued to Bailey, the book-keeper, for services. Shares apparently issued, 108.

March 24, 1892, there was a re-organization of the company by F. L. Davis and Bailey retiring and Pitman and Howland taking their places. The arrangement was, and it was voted at directors' meeting, to give Pitman 98 shares and Howland one share, but as there only remained 92 shares of treasury stock it became necessary to increase the number of shares for the purpose, and so it was voted by the directors to purchase F. L. Davis' two shares and Bailey's one share and accept the surrender of W. F. Davis' one share, for which he had not paid, thereby making in all 96 shares, an insufficient number to comply with the vote, if the two shares originally subscribed for by Morgan had been paid for by him and issued,—which is not probable,—nor unless one more share should

be returned to the treasury. The records says Morgan transferred to Pitman and Howland one share each, thereby giving Pitman 99, Howland 1, Morgan 99 and Davis 1, total 200 shares, equally divided between the new and old stockholders, 100 shares each. The record seems to indicate that Howland's share was transferred to him by Morgan, but that the directors "voted to give Pitman 98 shares and Morgan one share." Taken altogether, the proceedings seem to show that Morgan's one share was given to him from the corporation, and that 98 shares were given to Pitman for which nothing was paid.

Prior to November 19, 1892, Pitman's 99 shares were pledged to Howland for indorsements for the company, and then were transferred to him absolutely. This debt, together with other indorsements amounting to $7005, was secured to Howland by a mortgage of the assets of the corporation, the plant, which was foreclosed by sale at auction in July, 1893, and purchased by one Sanderson for the sum of $7000, the receipt of which Howland acknowledged in his deed of the property to Sanderson. This sale substantially satisfied the mortgage debt, and left Howland holding 99 shares of stock received from Pitman, one from the company and two from other sources, in all 102 shares. While holding at least 100 shares the plaintiff's bill for services accrued. She was the wife of Morgan. Morgan testified that Pitman's 99 shares and his own 99 shares were surrendered to the company and issued by the company to Howland as security during the season of 1892, for the indorsements then made by him and afterwards satisfied by the mortgage. Howland denies this, and Pitman, who must know, does not testify.

Morgan purchased his 101 shares for value—the plant—and that may be the reason why his 99 shares pledged to Howland with Pitman's 99 shares were returned to him, and Pitman's transferred to Howland, they having been issued to Pitman without cost. Still, we cannot say from the evidence that Pitman's stock had not been issued to him in good faith. He became president of the company, and retired when Howland appears to have furnished means for the business to an extent beyond the ability of

the corporation to pay, so that Pitman might well transfer his stock to Howland and be relieved from liability thereon to him by his securing the payment of his debt from the corporation assets by way of mortgage.

If Pitman's stock was really given to Howland, but in Pitman's name, then Howland would become liable for the par thereof. *Barron* v. *Burrill*, 86 Maine, 66-72. Plaintiff's counsel does not squarely so contend, nor are we satisfied of the fact. He does contend that the assignment to Howland, with knowledge that Pitman paid nothing for his stock, casts a liability upon Howland as if he had been the original subscriber therefor; but that is not the law of this state. The shares were not assessable, and if issued in good faith to Pitman and afterwards transferred to Howland, Pitman remains liable; but Howland does not become so. *Libby* v. *Tobey*, 82 Maine, 397.

The evidence shows that whatever Howland's liability may have been touching his other three shares of the aggregate par value of $150, he has paid unsecured debts of the corporation in excess of that sum and, therefore, under the statute, R. S., c. 46, § 48, cannot be held in this action. *Appleton* v. *Turnbull*, 84 Maine, 72.

*Judgment for defendant.*